THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HELEN CATTANEO,<br><br>                          Plaintiff,<br><br>        v.<br><br>TURO, INC.,<br><br>                          Defendant. | CASE NO. C21-0071-JCC<br><br>ORDER |

This matter comes before the Court on the parties' supplemental briefing regarding the Court's jurisdiction (Dkt. Nos. 22, 24). Having thoroughly considered the briefing and the relevant record and finding oral argument unnecessary, the Court concludes it lacks jurisdiction to entertain Ms. Cattaneo's claims and REMANDS this action to King County Superior Court.

## I.      BACKGROUND

Turo, Inc. operates a peer-to-peer car sharing business that connects individuals who wish to rent out their vehicles to individuals seeking to use them. (Dkt. No. 1-3 at 3–4.) Turo offers "damage protection plans" through which renters can choose to pay Turo a fee in exchange for Turo paying for damage to the vehicle that occurs during the rental.[1] (*Id.* at 4.) The amount Turo will pay depends on the plan the renter chooses. (*Id.*)

---

[1] Turo offers similar plans to individuals offering their vehicles for rent, but those plans are not relevant for purposes of this order. (*Id.* at 4.)

Helen Cattaneo alleges that she rented a vehicle through Turo and purchased a damage protection plan. (*Id.* at 7–8.) After she damaged the vehicle, Turo "denied coverage, demanded [she] pay various costs, charges, and fees, and submitted a claim against Plaintiff through Plaintiff's first-party automobile insurer." (*Id.* at 8.) Ms. Cattaneo does not allege that Turo's handling of her claim violated any law, nor does she allege that Turo breached its contract with her. Instead, she alleges that Turo violated Washington's Consumer Protection Act ("CPA") because Turo was not licensed by Washington's Insurance Commissioner at the time of the rental and when it denied coverage. (*Id.* at 12.) Ms. Cattaneo alleges that Turo's lack of a license injured her because she "did not receive the protections governing the business of insurance in the state of Washington, including scrutiny over policy provisions and policy premiums, fees, and/or rates." (*Id.* at 8–9.) Ms. Cattaneo also seeks a declaration that Turo unlawfully acted as an insurer without authorization and requests that the Court order Turo to disgorge "benefits and money" it "obtained . . . from acting as an insurer and transacting insurance in violation of Washington law." (*Id.* at 13.)

After removing the case to federal court, Turo moved to compel arbitration or, in the alternative, for the Court to dismiss the complaint. (Dkt. No. 12.) Turo identified the reservation it believes to be the subject of Ms. Cattaneo's complaint and noted in its motion that someone named Fiorenzo Cattaneo reserved the vehicle, not Plaintiff Helen Cattaneo. (*Id.* at 8–9 n.2; *see also* Dkt. Nos. 13 at 2, 13-3.) Turo also noted that Ms. Cattaneo was not an authorized driver on the reservation. (*Id.*) In response, Ms. Cattaneo claimed that she "and her husband, Fiorenzo," made the reservation and, contrary to what she alleged in the complaint, she never drove the vehicle and Fiorenzo was driving when the damage occurred. (Dkt. No. 15 at 5–6.) In its reply brief, Turo argued that the Court should dismiss the complaint because Ms. Cattaneo lacks Article III standing. (Dkt. No. 17 at 6–7, 9–10.)

The Court ordered supplemental briefing regarding whether Mr. Cattaneo would substitute for Ms. Cattaneo and, if not, whether the Court has jurisdiction to entertain Ms.

ORDER
C21-0071-JCC
PAGE - 2

1  Cattaneo's claims. (Dkt. No. 21 at 5.) The Court raised two questions about Ms. Cattaneo's

2  standing. The Court's most significant concern was that Ms. Cattaneo's claims are based solely

3  on the fact that Turo was not licensed by Washington's Insurance Commissioner, and it is not

4  clear how the lack of a license harmed her. (*Id.* at 4.) The Court also questioned whether Ms.

5  Cattaneo has Article III standing or satisfies the prudential limitation on third-party standing. (*Id.*

6  at 3.)

7  **II.    DISCUSSION**

8        To have standing, a plaintiff must have suffered an injury in fact that is concrete and

9  particularized and that is fairly traceable to the challenged actions of the defendant. *Lujan v.*

10 *Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). "[A] plaintiff must demonstrate standing for each

11 claim he seeks to press." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). Ms.

12 Cattaneo asserts two claims: a declaratory judgment and unjust enrichment claim and a

13 Washington Consumer Protection Act claim. (Dkt. No. 1-3 at 12–13.) The Court starts with the

14 declaratory judgment and unjust enrichment claim and then turns to the Consumer Protection Act

15 claim.

16      **A.  Declaratory Judgment and Unjust Enrichment Claim**

17        Despite the Court's request for supplemental briefing, Ms. Cattaneo does not explain why

18 she has standing to press her declaratory judgment and unjust enrichment claim, which is based

19 solely on Turo's failure to obtain a license. (*See* Dkt. No. 1-3 at 12–13.) The Court concludes

20 that she lacks standing to pursue this claim in federal court.

21        A plaintiff may not sue in federal court for "a bare procedural violation" absent harm

22 resulting from the violation. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1550 (2016); *see also*

23 *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) ("[D]eprivation of a procedural right

24 without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—

25 is insufficient to create Article III standing."). Although Ms. Cattaneo cites several substantive

26 insurance regulations regarding excessive rates in her supplemental brief, she never alleges that

1   *Turo* set excessive rates, and even if she had, that allegation is not in her complaint. (*See* Dkt.

2   No. 22 at 9.) The only statutes or regulations Ms. Cattaneo alleges Turo violated are statutes that

3   require insurers to be licensed. (*See id.* at 10–11.) Neither Ms. Cattaneo's complaint nor her

4   supplemental briefing explain why Turo's lack of a license, standing alone, harmed her.

5   Therefore, she has not alleged an injury in fact fairly traceable to Turo's lack of a license, and the

6   Court concludes that she lacks standing to pursue her declaratory judgment and unjust

7   enrichment claim in federal court. *See Treiber v. Aspen Dental Mgmt., Inc.*, 635 F. App'x 1 (2d

8   Cir. 2016) (summary order) (holding that plaintiffs who received dental treatment from dentists

9   employed by corporate entities that allegedly violated a New York law prohibiting non-dentists

10   from owning dental practices lacked standing); *Bell v. Am. Traffic Sols., Inc.*, 371 F. App'x 488

11   (5th Cir. 2010) (holding that plaintiffs who received traffic citations from red light cameras and

12   sought refunds from the operator of the cameras because it was not licensed lacked standing).

13   **B.  CPA Claim**

14         The Court now turns to Ms. Cattaneo's CPA claim. Ms. Cattaneo argues that she has

15   standing because her CPA claim is actually a false advertising claim and her allegations

16   regarding Turo's lack of a license are just background evidence in support of that claim.[2] The

17   theory Ms. Cattaneo lays out in her supplemental brief is as follows: Turo "used confusing and

18   misleading language to sell its damage protection plans to consumers across Washington," (Dkt.

19   No. 22 at 1), that confusing and misleading language persuaded Mr. Cattaneo to purchase a

20

21   [2] At one point, Ms. Cattaneo appears to suggest she asserts *two* CPA claims: one for "unfair"

22   conduct for "transacting in insurance without authorization" and one for "deceptive" conduct for misleading marketing. (*See* Dkt. No. 22 at 6.) A complaint must provide the defendant and the

23   Court with "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

24   It is not a Rorschach test that a plaintiff can reinterpret throughout the course of the litigation. The fact that Ms. Cattaneo's characterization of her claims is constantly shifting may suggest

25   that her complaint does not satisfy Rule 8. Regardless, the Court's conclusion is the same whether Ms. Cattaneo brings a single CPA claim for false advertising or one CPA claim for false

26   advertising and another based on Turo being unlicensed.

damage protection plan, the funds Mr. Cattaneo used to purchase the plan were community property, so Ms. Cattaneo was harmed by Turo's confusing and misleading advertising even though she did not see the advertising or purchase the damage protection plan personally, (*see generally id*). Ms. Cattaneo claims that Turo's lack of a license contributed to her injury because if Turo were licensed, Washington's Insurance Commissioner would have required the company to change the confusing and misleading language and Mr. Cattaneo never would have used community property to purchase the damage protection plan. (*See id.* at 11–12.)

The Court concludes that it also lacks jurisdiction to entertain this claim. As an initial matter, the CPA claim Ms. Cattaneo develops in her supplemental brief is not in her complaint. Tellingly, almost none of Ms. Cattaneo's claims about what she alleged in the complaint actually cite to the complaint. Indeed, the only facts Ms. Cattaneo alleges under her CPA cause of action are that Turo "acted as an insurer . . . without authorization," "transacted insurance . . . without authorization," "sold, solicited, and negotiated insurance . . . without a license," and "Defendant Turo's employees did business in Washington while holding themselves out as adjusters without a license." (Dkt. No. 1-3 at 12.) Therefore, Ms. Cattaneo's CPA claim, as pled, is based on Turo not being licensed, and Ms. Cattaneo lacks standing to pursue it for the reasons explained above.

Ms. Cattaneo's suggestion that Turo being unlicensed is just background evidence for a false advertising claim is difficult to take seriously given that the complaint focuses almost entirely on the lack of a license and contains only sparse references to Turo's advertising, none of which are connected to Ms. Cattaneo's causes of action. The Court is puzzled why Ms. Cattaneo insists on attempting to recharacterize her claims when the Federal Rules provide her with a simple means for changing the basis of her claims: amending the complaint. *See* Fed. R. Civ. P. 15(a). To the extent Ms. Cattaneo felt it necessary to change her theory in response to Turo's motion to dismiss for lack of standing, the proper approach was to amend the complaint, not to attempt to recharacterize the claims in her opposition briefing. *Schneider v. Cal. Dep't of Corrs.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6)

dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.").

Even if Ms. Cattaneo had included a false advertising claim in her complaint, the Court would conclude that it cannot entertain this suit. In addition to satisfying Article III, litigants wishing to proceed in federal court "must also meet non-constitutional or prudential requirements to invoke federal jurisdiction." *United States v. Lazarenko*, 476 F.3d 642, 649 (9th Cir. 2007); *see also Kowalski v. Tesmer*, 543 U.S. 125, 128 (2004). One such limitation is that a "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). In other words, plaintiffs generally cannot assert "the rights or legal interests of others in order to obtain relief from injury to themselves." *Id.* at 509. This rule is not absolute, however, and a party may rely on a third party's rights if there is a close relationship between the party and the third party and there is a hindrance to the third party asserting his own rights. *Kowalski*, 543 U.S. at 130.

Ms. Cattaneo's new CPA claim is based on an alleged violation of Mr. Cattaneo's rights. At bottom, Ms. Cattaneo alleges that Mr. Cattaneo had a right to truthful advertising, that Turo violated that right by making false and misleading statements, and that the violation of Mr. Cattaneo's right cost Ms. Cattaneo community property. But Ms. Cattaneo does not allege that Mr. Cattaneo faces a hindrance to asserting his own rights. Therefore, Ms. Cattaneo does not satisfy the prudential limitation on raising another's rights.

### C.  Ms. Cattaneo's Alternative Argument

In a last-ditch effort to manufacture jurisdiction, Ms. Cattaneo argues that Mr. Cattaneo could assign his false advertising claim to her. But "standing is determined as of the date of the filing of the complaint and the party invoking the jurisdiction of the court cannot rely on events that unfolded after the filing of the complaint to establish its standing." *Wilbur v. Locke*, 423 F.3d 1101, 1107 (9th Cir. 2005), *abrogated on other grounds by Levin v. Com. Energy, Inc.*, 560

U.S. 413 (2010) (cleaned up). Therefore, Ms. Cattaneo cannot fortify her claims by having Mr. Cattaneo assign his claims to her now, after the complaint has been filed. *Perkumpulan Inv. Crisis Ctr. Dressel-WBG v. Wong*, 2009 WL 10676449, slip op. at 7 (W.D. Wash. 2009), *aff'd*, 395 F. App'x 442 (9th Cir. 2010). If Mr. Cattaneo wished to have his wife pursue his claims, he should have assigned them before she filed suit.

### D. Remedy

Having concluded that Ms. Cattaneo lacks standing, the Court must determine the appropriate remedy. Turo requests that the Court dismiss Ms. Cattaneo's complaint, (Dkt. No. 17 at 6), but the proper remedy is to remand this action to King County Superior Court. *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."); *see also Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 970 n.6 (9th Cir. 2018) ("As a general rule, if the district court is confronted with an Article III standing problem in a removed case—whether the claims at issue are state or federal—the proper course is to remand for adjudication in state court."). The Ninth Circuit has suggested in the past that it may be appropriate for a district court to dismiss the complaint if "remand would be futile," but the court has cast doubt on the continuing vitality of the futility exception and, in any event, it does not apply here. *Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1197 (9th Cir. 2016). To dismiss based on futility, the Court "must have 'absolute certainty' that a state court would 'simply dismiss the action on remand.'" *Id.* (quoting *Bell v. City of Kellogg*, 922 F.2d 1418, 1425 (9th Cir. 1991)). Although the Court is skeptical that Ms. Cattaneo can proceed with her claims in state court, whether she can do so is a matter of state law, and the Court is not absolutely certain, on this record, that she cannot. Therefore, the Court must remand this action back to King County Superior Court.

### III.     CONCLUSION

For the foregoing reasons, the Court REMANDS this action to King County Superior Court.

ORDER
C21-0071-JCC
PAGE - 7

DATED this 30th day of July 2021.

John C. Coughenour
UNITED STATES DISTRICT JUDGE